VIRGINIA:

IN THE CIRCUIT COURT FOR THE CITY OF PETERSBURG

RICKY FREEMAN,

        Plaintiff,

v.

CURTIS BAY MEDICAL WASTE SERVICES, LLC,

SERVE:
        Corporation Service Company
        Registered Agent
        100 Shockoe Slip, 2nd Floor
        Richmond, VA 23219

and,

CURTIS BAY MEDICAL WASTE SERVICES VIRGINIA, LLC,

SERVE:
        Corporation Service Company
        Registered Agent
        100 Shockoe Slip, 2nd Floor
        Richmond, VA 23219

and,

TATE ENGINEERING SYSTEMS, INC.,

SERVE:
        James T Bacon
        Registered Agent
        11350 Random Hills Rd., Ste. 700
        Fairfax, VA 22030

and,

TATE ENGINEERING, INC.,

SERVE:
        James T Bacon
        Registered Agent
        11350 Random Hills Rd., Ste. 700
        Fairfax, VA 22030

CASE NO.: _____


EXHIBIT

A

and,

EDWARD MCCOLLUM,

SERVE:
      Edward McCollum
      35263 Babb Dr.
      Ivor, VA 23866

        Defendants.

## COMPLAINT

COMES NOW the plaintiff, Ricky Freeman (hereinafter "Freeman" or "Plaintiff"), by counsel, seeking judgment against the defendants, Curtis Bay Medical Waste Services, LLC (hereinafter "Curtis Bay" or "Defendant"), Curtis Bay Medical Waste Services Virginia, LLC (hereinafter "Curtis Bay" or "Defendant"), Tate Engineering Systems, Inc. (hereinafter "Tate" or "Defendant"), Tate Engineering, Inc. (hereinafter "Tate" or "Defendant") and Edward McCollum ("McCollum" or "Defendant"), on the grounds and in the amount as hereinafter set forth:

## JURISDICTION AND VENUE

1. This Court has proper jurisdiction over this matter pursuant to Va. Code Ann. § 17.1-513.

2. Upon information and belief, the cause of action accrued on March 31, 2017, in the City of Petersburg, Virginia.  Venue is proper in this jurisdiction pursuant to Va. Code Ann. § 8.01-262.

## PARTIES

3. Plaintiff Ricky Freeman is, and was at all times relevant to this action, a citizen and domiciliary of the Commonwealth of Virginia, who resides at 814 Spain Drive, Petersburg, Virginia 23805.

4. Defendant Curtis Bay Medical Waste Services, LLC is, and was at all times relevant to this action, a corporation incorporated in the State of Delaware, with its principal place of

business at 3200 Hawkins Point Road, Baltimore, Maryland 21126.

5.  Defendant Curtis Bay Medical Waste Services Virginia, LLC is, and was at all times relevant to this action, a corporation incorporated in the State of Delaware, with its principal place of business at 3200 Hawkins Point Road, Baltimore, Maryland 21126.

6.  Defendant Tate Engineering Systems, Inc., is, and was at all times relevant to this action, a corporation incorporated in the state of Maryland, with its principal place of business at 3921 Vero Road, Baltimore, Maryland 21227.

7.  Defendant Tate Engineering, Inc., is, and was at all times relevant to this action, a corporation incorporated in the state of Maryland, with its principal place of business at 3921 Vero Road, Baltimore, Maryland 21227.

8.  Defendant Edward McCollum is, and was at all times relevant to this action, a citizen and domiciliary of the Commonwealth of Virginia, who resides, upon information and belief, in Ivor, Virginia.

## STATEMENT OF FACTS

9.  On or about March 31, 2017, Plaintiff was sitting inside his truck at a red traffic light, his vehicle stationary approximately 30 feet away from the Curtis Bay Medical Waste building (hereinafter the "site" or "waste site") in the City of Petersburg, Virginia.

10. At the same time and place aforesaid, the waste site at Curtis Bay Medical Waste Building exploded.

11. At the same time and place aforesaid, Plaintiff opened the door and exited his vehicle, attempting to protect himself from the explosion and take cover from the flying debris at a distance farther away from the exploding waste site.

12. At the same time and place aforesaid, as Plaintiff ran in the opposite direction from the explosion, Plaintiff was unable to find cover elsewhere.

13.   At the same time and place aforesaid, Plaintiff ran back to his vehicle and attempted to lower himself to the ground to take cover underneath his vehicle.

14.   At the same time and place aforesaid, while Plaintiff was lowering himself to the ground, a piece of concrete flew through the air from the explosion and struck his right shoulder.

15.   At the same time and place aforesaid, as a result of the explosion, Plaintiff suffered extensive injuries, including, but not limited to, substantial loss of hearing, blast injury, contusion of right shoulder, and suffers continued pain in the right shoulder.

16.   Curtis Bay represented to the public that as a company they were committed to the highest level of safety in how they conducted business and in protecting employees, the public, their customers, the public, and the environment.

17.   Curtis Bay represented to the public that their company's employees and staff received constant training and testing to maintain a safe, effective operation.

18.   Curtis Bay represented to the public that internal audits are performed to ensure their operations are running efficiently and safely.

19.   Curtis Bay represented to the public that their Medical Waste-to-Energy disposal facility is the most effective way to dispose of medical waste and other highly infectious materials.

20.   Curtis Bay represented to the public that all of their records are safely stored and backed up.

## CAUSES OF ACTION

### COUNT I: NEGLIGENCE OF CURTIS BAY MEDICAL WASTE SERVICES

21.   Plaintiff hereby incorporates by reference all aforementioned allegations as fully restated herein.

22.   The building that exploded was owned, operated, controlled, and/or managed by Curtis

Bay Medical Waste Services on March 31, 2017, and at all times relevant to this action.

23.　At all times relevant to this action, Defendant Curtis Bay, and its agents, owed to Plaintiff a duty of ordinary care to:

　　a.　Install, or hire a third party to install, all equipment reasonably necessary for the safe and proper functionality of a medical waste site.

　　b.　Complete regular maintenance of, or, hire a third-party maintenance company experienced in maintaining gas lines to complete regular maintenance of, the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

　　c.　Provide a supervisor with sufficient expertise and experience to supervise the conduct and work of less experienced maintenance workers in completing the regular maintenance of the site's gas lines and other areas of the premises reasonably necessary for the proper functionality of a medical waste site; or, hire a third party maintenance company that would provide a supervisor with sufficient expertise and experience to supervise the conduct and work of less experienced maintenance workers in completing the regular maintenance of the site's gas lines and other areas of the premises reasonably necessary for the proper functionality of a medical waste site.

　　d.　Maintain and otherwise follow general procedures of the maintenance of the site's gas lines, and of other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

　　e.　Actually and sufficiently maintain the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

    f.   Conduct, as reasonably necessary, reviews of the site's maintenance records, so as to keep up to date with the functionality of the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

    g.   Prevent the existence of any and all gas leaks and all other abnormalities of premises functionality that would otherwise compromise the safety of a medical waste site.

    h.   Detect the existence of any and all gas leaks and all other abnormalities of premises functionality that would otherwise compromise the safety of a medical waste site.

    i.   Remedy the existence of any and all gas leaks and all other abnormalities of premises functionality that would otherwise compromise the safety of a medical waste site.

    j.   Otherwise properly and reasonably maintain the premises so as to prevent, detect, and remedy a gas leak, any other abnormality of functionality rendering the premises unsafe, and ultimate explosion at the site.

24.    At the time of the explosion, notwithstanding Curtis Bay's legal duties owed to Freeman, Curtis Bay breached these duties and was a proximate cause to Plaintiff's injuries when when Defendant failed to exercise ordinary care by:

    a.   Hiring inexperienced maintenance workers and plant managers to work on and complete maintenance of the site's gas lines other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

        i.   Upon information and belief, the Plant Manager at Curtis Bay was

often unable to maintain and otherwise reasonably operate the boiler that exploded.

ii.  Upon information and belief, the Plant Manager at Curtis Bay often availed himself, at all hours of the day and night, of a qualified and licensed maintenance technician to complete simple tasks relating to the boiler, such as turning the boiler on and off.

b.  Willfully ignoring known problems and failing to implement changes to the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site, recommended by a qualified and licensed maintenance technician.

i.  Upon information and belief, a qualified and licensed maintenance technician found problems, upon routine inspection, associated with the boiler that exploded.

ii.  Upon information and belief, a qualified and licensed maintenance technician recommended to Defendant Curtis Bay that it implement changes and otherwise remedy the problems associated with the boiler that exploded.

iii.  Upon information and belief, Defendant Curtis Bay had knowledge of the problems associated with the boiler that exploded, but it failed to implement those changes or otherwise remedy the problems.

c.  Failing to maintain or otherwise follow general procedures of the maintenance of the site's gas lines.

d.  Failing to sufficiently and actually maintain the site's gas lines.

e.  Failing to sufficiently review and otherwise rely on the site's maintenance

records, allowing it to ascertain the existence of the gas leak.

    f.  Failing to prevent the existence of the gas leak.

    g.  Failing to detect the existence of the gas leak.

    h.  Failing to remedy the existence of the gas leak.

    i.  And Curtis Bay was otherwise negligent.

25.    At all times relevant to this action, Plaintiff exercised ordinary care.

26.    As a direct and proximate result of the negligence, carelessness, and recklessness of Defendant Curtis Bay, and/or its agents, Plaintiff was caused to sustain serious, permanent bodily injuries and deformities; has suffered and will continue to suffer physical pain; has suffered and will continue to suffer mental anguish; has been and will continue to be inconvenienced; has suffered diminished earnings capacity; and has incurred substantial medical and related expenses and will continue to suffer such expenses; and Plaintiff has otherwise been damaged.

## COUNT II: GROSS NEGLIGENCE OF CURTIS BAY MEDICAL WASTE SERVICES

27.    Plaintiff hereby incorporates by reference all aforementioned allegations as fully restated herein.

28.    The building that exploded was owned, operated, controlled, and/or managed by Curtis Bay Medical Waste Services on March 31, 2017, and at all times relevant to this action.

29.    The Supreme Court of Virginia has defined "gross negligence" as "that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another. 'It is a heedless and palpable violation of legal duty respecting the rights of others.' Gross negligence amounts to the absence of slight diligence, or the want of even scant care." *Frazier v. City of Norfolk*, 234 Va. 388, 393, 362 S.E.2d 688, 691 (1987) (citations omitted).

30.   At all times relevant to this action, Defendant Curtis Bay, and its agents, owed to Plaintiff a duty of ordinary care to:

    a.   Install, or hire a third party to install, all equipment reasonably necessary for the safe and proper functionality of a medical waste site.

    b.   Complete regular maintenance of, or, hire a third party maintenance company experienced in maintaining gas lines to complete regular maintenance of, the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

    c.   Provide a supervisor with sufficient expertise and experience to supervise the conduct and work of less experienced maintenance workers in completing the regular maintenance of the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site, or, hire a third party maintenance company that would provide a supervisor with sufficient expertise and experience to supervise the conduct and work of less experienced maintenance workers in completing the regular maintenance of the site's gas lines and other areas of the premises reasonably necessary for the proper functionality of a medical waste site.

    d.   Maintain and otherwise follow general procedures of the maintenance of the site's gas lines, and of other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

    e.   Actually and sufficiently maintain the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

    f.   Conduct, as reasonably necessary, reviews of the site's maintenance records, to

keep up to date with the functionality of the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

g.   Prevent the existence of any and all gas leaks and all other abnormalities of premises functionality that would otherwise compromise the safety of a medical waste site.

h.   Detect the existence of any and all gas leaks and all other abnormalities of premises functionality that would otherwise compromise the safety of a medical waste site.

i.   Remedy the existence of any and all gas leaks and all other abnormalities of premises functionality that would otherwise compromise the safety of a medical waste site.

j.   Otherwise reasonably and properly maintain the premises so as to prevent a gas leak, any other abnormality of functionality rendering the premises unsafe, and ultimate explosion at the medical waste site.

31.   At the time of the explosion, notwithstanding Curtis Bay's legal duties owed to Freeman, Curtis Bay demonstrated an utter disregard of prudence amounting to complete neglect of the safety of Plaintiff and otherwise breached these duties by:

a.   Hiring inexperienced maintenance workers and plant managers to work on and complete maintenance of the site's gas lines other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

   i.   Upon information and belief, the Plant Manager at Curtis Bay was often times unable to maintain and otherwise reasonably work the

boiler that exploded.

    ii.  Upon information and belief, the Plant Manager at Curtis Bay often availed himself, at all hours of the day and night, of a qualified and licensed maintenance technician to complete simple tasks relating to the boiler, such as turning the boiler on and off.

b.  Willfully ignoring known problems and failing to implement changes to the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site, recommended by a qualified and licensed maintenance technician.

    i.  Upon information and belief, a qualified and licensed maintenance technician found problems, upon routine inspection, associated with the boiler that exploded.

    ii.  Upon information and belief, a qualified and licensed maintenance technician recommended to Defendant Curtis Bay that it implement changes and otherwise remedy the problems associated with the boiler that exploded.

    iii.  Upon information and belief, Defendant Curtis Bay had knowledge of the problems associated with the boiler that exploded, but it failed to implement those changes or otherwise remedy the problems.

c.  Failing to maintain or otherwise follow general procedures of the maintenance of the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

d.  Failing to sufficiently and actually maintain the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a

medical waste site.

    e.  Failing to sufficiently review and otherwise rely on the site's maintenance records, allowing it to ascertain the existence of the gas leak.

    f.  Failing to prevent the existence of the gas leak.

    g.  Failing to detect the existence of the gas leak.

    h.  Failing to remedy the existence of the gas leak.

    i.  And Curtis Bay otherwise showed an utter disregard of prudence amounting to complete neglect of the safety of Plaintiff.

32.    At all times relevant to this action, Plaintiff exercised ordinary care.

33.    As a direct and proximate result of the gross negligence, carelessness, and recklessness of Defendant Curtis Bay, and/or its agents, Plaintiff was caused to sustain serious, permanent bodily injuries and deformities; has suffered and will continue to suffer physical pain; has suffered and will continue to suffer mental anguish; has been and will continue to be inconvenienced; has suffered diminished earnings capacity; and has incurred substantial medical and related expenses; and Plaintiff has otherwise been damaged.

### COUNT III: NEGLIGENCE OF TATE ENGINEERING SYSTEMS, INC.

34.    Plaintiff hereby incorporates by reference all aforementioned allegations as fully restated herein.

35.    Tate Engineering Systems, Inc., was employed by Curtis Bay Medical Waste Services to provide routine maintenance of the site on May 31, 2017, and at all other times relevant to this action.

36.    At all times relevant to this action, Defendant Tate Engineering Systems, Inc., and its agents, owed to Plaintiff a duty of ordinary care to:

a.  Provide maintenance workers experienced in the area of maintenance of a medical waste site to complete regular maintenance of the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

b.  Provide a maintenance supervisor with sufficient expertise and experience to supervise the conduct and work of less experienced workers completing the regular maintenance of the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

c.  Maintain and otherwise follow general procedures of the maintenance of the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

d.  Actually and sufficiently, and in accordance with standard practices of a maintenance company employed in the area of maintaining a medical waste site, maintain the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

e.  Conduct, as reasonably necessary, reviews of the site's maintenance records, to keep up to date with the functionality of the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

f.  Prevent the existence of any and all gas leaks and all other abnormalities of premises functionality that would otherwise compromise the safety of a medical waste site.

g.  Detect the existence of any and all gas leaks and all other abnormalities of

premises functionality that would otherwise compromise the safety of a medical waste site.

h.  Remedy the existence of any and all gas leaks and all other abnormalities of premises functionality that would otherwise compromise the safety of a medical waste site.

i.  Otherwise properly and reasonably maintain the premises so as to prevent a gas leak, any other abnormality of functionality rendering the premises unsafe, and ultimate explosion at the site.

37.   At the time of the explosion, notwithstanding Tate's legal duties owed to Freeman, Tate breached these duties when it failed to exercise ordinary care by:

a.  Providing inexperienced maintenance workers to work on and complete maintenance of the site's gas lines and other areas of the premises reasonably necessary for the safe and proper functionality of a medical waste site.

b.  Failing to maintain or otherwise follow general procedures of the maintenance of the site's gas lines.

c.  Failing to sufficiently and actually maintain the site's gas lines.

d.  Failing to sufficiently review and otherwise rely on the site's maintenance records, allowing it to ascertain the existence of the gas leak.

e.  Failing to withdraw maintenance support upon knowledge of Curtis Bay's willful ignorance of the problems associated with the boiler that exploded.

    i.  Upon information and belief, Defendant Tate had knowledge of the functionality problems associated with the boiler that exploded.

    ii.  Upon information and belief, Defendant Tate recommended to Defendant Curtis Bay that it implement changes reasonably necessary

to render the premises safe and otherwise reinstate proper functionality of a medical waste site.

iii. Upon information and belief, Defendant Curtis Bay failed to implement the recommended changes reasonably necessary to render the premises safe and otherwise reinstate proper functionality of a medical waste site.

iv. Upon information and belief, Defendant Tate had knowledge of Defendant Curtis Bay's noncompliance with its recommendations, yet continued to provide services and otherwise failed to alert the proper authorities as to its noncompliance and the possible and plausible dangers arising therefrom.

f. Failing to prevent the existence of the gas leak.

g. Failing to detect the existence of the gas leak.

h. Failing to remedy the existence of the gas leak.

i. And Tate was otherwise negligent.

38. At all times relevant to this action, Plaintiff exercised ordinary care.

39. As a direct and proximate result of the negligence, carelessness, and recklessness of Defendant Tate Engineering Maintenance Systems, Inc., and/or its agents, Plaintiff was caused to sustain serious, permanent bodily injuries and deformities; has suffered and will continue to suffer physical pain; has suffered and will continue to suffer mental anguish; has been and will continue to be inconvenienced; has suffered diminished earnings capacity; and has incurred substantial medical and related expenses; and Plaintiff has otherwise been damaged.

## COUNT IV: NEGLIGENCE OF EDWARD MCCOLLUM

40.   Plaintiff hereby incorporates by reference all aforementioned allegations as fully restated herein.

41.   Defendant Edward McCollum was employed by Defendant Curtis Bay Medical Waste Services on May 31, 2017, and at all other times relevant to this action.

42.   Upon information and belief, Edward McCollum was the plant manager of Defendant Curtis Bay Medical Waste Services on the date of the incident, and at all other times relevant to this action.

43.   At all times relevant to this action, Defendant Edward McCollum owed to Plaintiff an ordinary duty of care to:

   a.   Acquire and maintain sufficient knowledge regarding the operation of a medical waste site, in accordance with the general standards in the medical waste site industry, to allow for his safe and effective management of the Curtis Bay waste site.

   b.   Oversee and ensure compliance with any and all safety procedures of the Curtis Bay waste site regarding all boilers, gas lines, appliances, machinery, or otherwise (the "machinery").

   c.   Oversee and ensure the proper maintenance of the Curtis Bay waste site, including all boilers, gas lines, appliances, machinery, or otherwise, therein.

   d.   Oversee and ensure the safe operation of the Curtis Bay waste site, including all boilers, gas lines, appliances, machinery, or otherwise, therein.

   e.   Advise his superiors regarding any knowledge and/or notice he obtained of the noncompliance with one or more safety procedures of the waste site.

   f.   Advise his superiors regarding any knowledge and/or notice he obtained that the

boilers, gas lines, appliances, machinery, or otherwise, were not maintained in compliance with site's safety procedures.

g.  Advise his superiors regarding any knowledge and/or notice he obtained that the waste site was not safe to operate, or was otherwise unsafe to carry on the ordinary business of a medical waste site.

44.  At the time of the explosion, notwithstanding McCollum's legal duties owed to Freeman, McCollum breached these duties and was a proximate cause to Plaintiff's injuries when McCollum failed to exercise ordinary care by:

a.  Failing to acquire and maintain sufficient knowledge regarding the operation of a medical waste site.

    i.  Upon information and belief, McCollum was unable to ensure the safe operation of the waste site.

    ii.  Upon information and belief, McCollum often sought help in conducting the most basic procedures and tasks regarding the operation of the boilers and gas lines.

    iii.  Upon information and belief, McCollum sought help in turning the boilers on in order to begin operations.

    iv.  Upon information and belief, McCollum sought advice regarding the proper functionality of the boilers.

b.  Failing to oversee and ensure compliance with one or more safety procedures of the Curtis Bay waste site.

    i.  Upon information and belief, McCollum made it a regular practice to ask unlicensed Curtis Bay employees to operate the boilers at the waste site, with the knowledge that such employees were not licensed

        to operate said boilers.

    ii.  Upon information and belief, McCollum failed to ensure that the feedwater tank, boiler, and burner were all the proper size for proper functionality.

    iii.  Upon information and belief, McCollum was told of the improper sized feedwater tank, boiler, and burner.

    iv.  Upon information and belief, McCollum nevertheless continued to operate the boiler, in conjunction with the feedwater tank and burner, with the knowledge of their incompatible sizes.

c.  Failing to oversee and ensure the proper maintenance of the boiler, feedwater tank, burner, machinery at the Curtis Bay waste site.

    i.  Upon information and belief, McCollum made it a regular practice to ask unlicensed Curtis Bay employees to operate the boilers at the waste site, with the knowledge that such employees were not licensed to operate said boilers.

    ii.  Upon information and belief, McCollum failed to ensure that the feedwater tank, boiler, and burner were all the proper size for proper functionality.

    iii.  Upon information and belief, McCollum was told of the improper sized feedwater tank, boiler, and burner.

    iv.  Upon information and belief, McCollum nevertheless continued to operate the boiler, in conjunction with the feedwater tank and burner, with the knowledge of their incompatible sizes.

d.  Failing to oversee and ensure the safe operation of the Curtis Bay waste site.

i. Upon information and belief, McCollum was told that the boiler that exploded was unsafe to operate due to its sizing incompatibility with the other pieces of machinery required for its proper operation and functionality.

   1. Upon information and belief, McCollum was told that the boiler that exploded was 225 Horsepower.

   2. Upon information and belief, McCollum had knowledge that the machinery needed for the boiler's proper functionality must be compatible with a 225 Horsepower boiler.

   3. Upon information and belief, McCollum failed to ensure that the required machinery was compatible in size with a 225 Horsepower boiler.

ii. Upon information and belief, McCollum was told that the feedwater tank connected to the boiler that exploded was not the proper size.

   1. Upon information and belief, maintaining the proper water level in a boiler is an important factor in ensuring the proper functionality of a boiler.

   2. Upon information and belief, a feedwater tank is the machinery employed to ensure the sufficient water level in a boiler.

   3. Upon information and belief, the use of a feedwater tank must be adequately sized in order to properly ensure and maintain the water level in a boiler.

   4. Upon information and belief, McCollum was told that the feedwater tank produces 16 inches of water.

5. Upon information and belief, McCollum had knowledge that feedwater tank produced an insufficient amount of water for a 225 Horsepower boiler.

6. Upon information and belief, McCollum was told that the improperly sized feedwater tank could be detrimental to the functionality of the boiler that exploded.

7. Upon information and belief, McCollum failed to take steps to replace or otherwise make safe the feedwater tank.

iii. Upon information and belief, McCollum was told that the burner connected to the boiler was too large for the boiler that was in place.

1. Upon information and belief, McCollum was told that the burner connected to the boiler that exploded was compatible with, and should be used only with, a 500 Horsepower boiler.

2. Upon information and belief, McCollum had knowledge that the burner produced too much power for a 225 Horsepower boiler.

3. Upon information and belief, McCollum was told that the improperly sized burner could be detrimental to the functionality of the boiler that exploded.

4. Upon information and belief, McCollum failed to take any steps to replace or otherwise make safe the burner.

iv. Upon information and belief, McCollum was told that the gas lines connected to the boiler would be unable to withstand the incompatibility of the improperly sized feedwater tank and burner.

1. Upon information and belief, McCollum had knowledge that the gas lines had the potential to malfunction due to the strain of the incompatible machinery connected to the boiler.

2. Upon information and belief, McCollum failed to take any steps to replace or otherwise make safe the gas lines connected to the boiler.

v. Upon information and belief, McCollum continued to allow the boiler to operate with the improper sized feedwater system and burner, because he was of the belief that Curtis Bay could not afford an upgrade until began making money.

e. Failing to advise his superiors regarding the knowledge that he obtained of the noncompliance with one or more safety procedures of the waste site.

i. Upon information and belief, McCollum failed to tell any of his superiors at Curtis Bay about the improperly sized feedwater system connected to the boiler that exploded.

ii. Upon information and belief, McCollum failed to tell any of his superiors at Curtis Bay about the improperly sized burner connected to the boiler that exploded.

iii. Upon information and belief, McCollum failed to tell any of his superiors at Curtis Bay about the incompatibility of the gas lines with the boiler and other machinery.

iv. Upon information and belief, McCollum failed to tell any of his superiors at Curtis Bay that the incompatibility of the aforementioned machinery and its possible or probable detrimental effects to the boiler

that exploded.

f. Failing to advise his superiors regarding the knowledge that he obtained regarding the noncompliance of the maintenance of the boiler and gas line involved in this incident.

    i. Upon information and belief, McCollum failed to tell any of his superiors at Curtis Bay about the improperly sized feedwater system connected to the boiler that exploded.

    ii. Upon information and belief, McCollum failed to tell any of his superiors at Curtis Bay about the improperly sized burner connected to the boiler that exploded.

    iii. Upon information and belief, McCollum failed to tell any of his superiors at Curtis Bay about the incompatibility of the gas lines with the boiler and other machinery.

    iv. Upon information and belief, McCollum failed to tell any of his superiors at Curtis Bay that the incompatibility of the aforementioned machinery and its possible or probable detrimental effects to the boiler that exploded.

g. Failing to advise his superiors regarding the knowledge he obtained that the waste site was not safe to operate or otherwise carry on the ordinary business of the waste site.

    i. Upon information and belief, McCollum failed to tell any of his superiors at Curtis Bay about the improperly sized feedwater system connected to the boiler that exploded.

    ii. Upon information and belief, McCollum failed to tell any of his

superiors at Curtis Bay about the improperly sized burner connected to the boiler that exploded.

iii.   Upon information and belief, McCollum failed to tell any of his superiors at Curtis Bay about the incompatibility of the gas lines with the boiler and other machinery.

iv.   Upon information and belief, McCollum failed to tell any of his superiors at Curtis Bay that the incompatibility of the aforementioned machinery and its possible or probable detrimental effects to the boiler that exploded.

45.   At all times relevant to this action, Plaintiff exercised ordinary care.

46.   As a direct and proximate result of the negligence, carelessness, and recklessness of Defendant Edward McCollum, Plaintiff was caused to sustain serious, permanent bodily injuries and deformities; has suffered and will continue to suffer physical pain; has suffered and will continue to suffer mental anguish; has been and will continue to be inconvenienced; has suffered diminished earnings capacity; and has incurred substantial medical and related expenses; and Plaintiff has otherwise been damaged.

## COUNT V: NEGLIGENCE BY RESPONDEAT SUPERIOR—CURTIS BAY MEDICAL WASTE SERVICES

47.   Plaintiff hereby incorporates by reference all aforementioned allegations as fully restated herein.

48.   McCollum is, and was at all times relevant to this action, an employee or agent of Curtis Bay Medical Waste Services.

49.   At all times relevant to this action, McCollum was performing business for Curtis Bay Medical Waste Services.

50. At all times relevant to this action, McCollum was acting within the scope of the business of Curtis Bay Medical Waste Services.

51. The injuries sustained by Plaintiff were caused by the actions or omissions on part of McCollum, within the scope of his authority vested by Curtis Bay Medical Waste Services.

52. McCollum's actions or omissions were committed in his capacity as plant manager of Curtis Bay Medical Waste Services.

53. McCollum's actions or omissions committed in his capacity as plant manager of Curtis Bay Medical Waste Services were within the scope of his authority vested by Curtis Bay Medical Waste Services.

54. The injuries sustained by Plaintiff were caused by the actions or omissions of McCollum, committed in his capacity as plant manager of Curtis Bay Medical Company and within the ordinary course of Curtis Bay Medical Company's business.

55. McCollum's failure to ensure compliance with site procedures, maintenance, and otherwise ensure the safe operation of the Curtis Bay medical wastes site, which led to the explosion of the boiler, caused Plaintiff's aforementioned injuries.

## DAMAGES

56. As a result of the negligence of Curtis Bay Medical Waste Services and Tate Engineering Systems, Inc., Plaintiff was injured and suffered the following damages: serious and permanent bodily injury, past and present; physical pain and mental anguish, past, present, and that which he may be reasonably expected to suffer in the future; inconvenience, past, present, and that which he may be reasonably be expected to suffer in the future; medical expenses, past and present; lost earnings, past, present, and that which he may be reasonably expected to suffer in the future; disfigurement, deformity, and any associated

humiliation or embarrassment; and has otherwise been damaged.

**WHEREFORE,** Plaintiff Ricky Freeman respectfully prays for judgment and award of execution against Defendants Edward McCollum, Curtis Bay Medical Waste Services, and Tate Engineering Systems, Inc., individually, as well as jointly and severally, in the amount of $2,800,000.00 (TWO MILLION EIGHT HUNDRED THOUSAND) and interest from the date of this accident, pursuant to Virginia Code Section 8.01-382, and for punitive damages against Defendant Curtis Bay Medical Waste Services in the amount of $350,000.00 (THREE HUNDRED FIFTY THOUSAND), pursuant to Virginia Code Section 8.01-38.1, plus his costs expended herein.

**A JURY TRIAL IS REQUESTED.**

RICKY FREEMAN

By: _____
Of Counsel

Damon Pendleton, Esquire (VSB #79706)
Christina Pendleton & Associates, P.C.
1506 Staples Mill Road, Suite 101
Richmond, Virginia 23230
Tel:    (804) 250-5050
Fax:   (804) 977-2392
Email: dlp@cpenlaw.com
*Counsel for Plaintiff*