IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**RICKY FREEMAN,**

    **Plaintiff,**

v.                                                                                     **Civil Action No. 3:18cv437**

**CURTIS BAY MEDICAL**
**WASTE SERVICES, LLC,** *et al.,*

    **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Ricky Freeman's Motion to Remand. (ECF No. 9.) Defendants Curtis Bay Medical Waste Services, LLC, Curtis Bay Medical Waste Services Virginia, LLC (collectively with Curtis Bay Medical Waste Services, LLC, the "Curtis Bay Defendants"), and Edward McCollum responded,[1] (ECF No. 13), and Freeman replied, (ECF No. 14.)

The materials before the Court adequately present the facts and legal contentions, and oral argument would not aid the decisional process. Accordingly, the matter is ripe for disposition. For the reasons stated below, the Court will grant the Motion to Remand.

---

[1] The Complaint names two other defendants: Tate Engineering Systems, Inc. and Tate Engineering, Inc. (collectively, the "Tate Defendants"). (*See* Compl., ECF No. 1-1.) Although the Curtis Bay Defendants and McCollum represent that the Tate Defendants consented to removal, the Tate Defendants appear to have taken no part in the filings related to the Motion to Remand. Accordingly, the Court refers primarily to the Curtis Bay Defendants and McCollum.

## I. Standard of Review

### A. Removal Jurisdiction & Remand

Under 28 U.S.C. § 1441(a),[2] a defendant may remove a civil action to a federal district court if the plaintiff could have originally brought the action in federal court. 28 U.S.C. § 1441(a). Section 1446 delineates the procedure for removal. *See* 28 U.S.C. §§ 1446(a), (d). The state court loses jurisdiction upon the removal of an action to federal court. 28 U.S.C. § 1446(d) ("[T]he State court shall proceed no further unless and until the case is remanded."). The removability of a case "depends upon the state of the pleadings and the record at the time of the application for removal...." *Ala. Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 216 (1906); *see also Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) ("the right to remove ... [is] determined according to the plaintiffs' pleading at the time of the petition for removal."). Under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"The party seeking removal bears the initial burden of establishing federal jurisdiction." *Abraham v. Cracker Barrel Old Country Store, Inc.*, No. 3:11cv182, 2011 WL 1790168, at *1 (E.D. Va. May 9, 2011) (citing *Mulcahey v. Columbia Organic Chem. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)). No presumption favoring the existence of federal subject matter jurisdiction exists because federal courts have limited, not general, jurisdiction. *Id.* (citing *Pinkley Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999)). In deference to federalism concerns,

---

[2] Section 1441(a) provides, in pertinent part:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

courts must construe removal jurisdiction strictly. *Id.* (citing *Mulcahey*, 29 F.3d at 151). "If federal jurisdiction is doubtful, a remand is necessary." *Id.* (quoting *Mulcahey*, 29 F.3d at 151).

A federal district court has diversity jurisdiction over "all civil actions where the matter in controversy exceeds ... $75,000 ... and is between ... [c]itizens of different states." 28 U.S.C. § 1332(a)(1). Federal diversity jurisdiction requires complete diversity of citizenship. *Abraham*, 2011 WL 1790168 at *2 (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990)); *see also* 28 U.S.C. § 1332(a)(1). "[T]he 'citizenship of each plaintiff [must be] diverse from the citizenship of each defendant.'" *Abraham*, 2011 WL 1790168, at *2 (quoting *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (second alteration in original)).

### B. The Fraudulent Joinder Doctrine

The fraudulent joinder doctrine operates as an exception to the complete diversity requirement, permitting a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, and dismiss the nondiverse defendants, thereby retaining jurisdiction. *Abraham*, 2011 WL 1790168, at *2 (citing *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). "To show fraudulent joinder, the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (alteration in original) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). "The party alleging fraudulent joinder bears a heavy burden – it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Id.* "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)." *Id.* "Once the court

3

identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Id.* at 426; *see also Allard v. Laroya*, 163 F. Supp. 3d 309, 311 (E.D. Va. 2016). In making this determination, the Court is not bound by the allegations in the pleadings, but may consider the entire record. *Mayes*, 198 F.3d at 464.

## II. Factual and Procedural Background

### A. Procedural History

On May 18, 2018, Freeman filed the Complaint in the Circuit Court for the City of Petersburg (the "Petersburg Circuit Court"), seeking damages for personal injuries pursuant to state law negligence claims. Freeman served all the defendants on or about May 25, 2018. The defendants filed various responsive pleadings at the state level.[3] On June 21, 2018, the Curtis Bay Defendants and McCollum timely removed this action from the Petersburg Circuit Court to this Court, claiming diversity jurisdiction. (ECF No. 1.)

On June 27, 2018, Freeman filed this Motion to Remand, claiming that full diversity does not exist because both Plaintiff Freeman and Defendant McCollum reside in Virginia. Freeman asks the Court to remand the case and order attorney's fees associated with defending this allegedly improper removal. On July 11, 2018,[4] the Curtis Bay Defendants and McCollum responded in opposition to the Motion to Remand, countering that Freeman fraudulently joined

---

[3] On June 13, 2018, the Tate Defendants filed a "Demurrer, Motion to Drop for Misjoinder, Answer, and Cross-Claim." (Mot. Remand ¶ 3; *see also* ECF No. 1-3.) On June 14, 2018, the Curtis Bay Defendants and McCollum jointly filed a Demurrer, Answer, and Cross-Claim in the Petersburg Circuit Court.

[4] Between June 27, 2018, and July 11, 2018, parties filed responses, in this Court, to pleadings filed in the Petersburg Circuit Court. On July 5, 2018, the Tate Defendants filed an Answer, (ECF No. 10), to the Cross-Claim that the Curtis Bay Defendants and McCollum brought against the Tate Defendants in the Petersburg Circuit Court prior to removal. On July 10, 2018, Freeman filed a response in opposition, (ECF No. 11), to the Demurrer that the Curtis Bay Defendants and McCollum filed in the Petersburg Circuit Court. On that same day, Freeman also filed a response in opposition, (ECF No. 12), to the Demurrer that the Tate Defendants filed in the Petersburg Circuit Court.

4

McCollum to this action to avoid removal to federal court.[5] Freeman replied to the Curtis Bay Defendants and McCollum's response.

B. **Summary of Allegations in the Complaint**[6]

This personal injury action arises from a March 31, 2017 explosion at a medical waste site located in the City of Petersburg, Virginia (the "Waste Site" or "Site"). On that date, according to Freeman, a boiler in the Waste Site exploded, sending "flying debris" into the vicinity. (Compl. ¶¶ 10–11, ECF No. 1-2.) At the time of the explosion, Freeman avers he "was sitting inside his truck at a red traffic light, his vehicle approximately 30 feet away from" the Waste Site. (*Id.* ¶ 9.)

Freeman alleges that, at first, he got out of his truck to seek cover farther away from the explosion. Finding none, Freeman returned to his vehicle and lowered himself to the ground to take cover underneath his vehicle. The Complaint states that "while [Freeman] was lowering himself to the ground, a piece of concrete flew through the air from the explosion and struck his

---

[5] The Curtis Bay Defendants and McCollum claim that the Court must consider Freeman's "real intention" behind Freeman's decision to bring a claim against McCollum. (Resp. 5, ECF No. 13 (quoting *Aids Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990)).) The removing defendants rely on *Linnin v. Michelsens*, 372 F. Supp. 2d 811 (E.D. Va. 2005), to argue that the Court should determine whether Freeman brought suit against McCollum without any "real intention" of recovering from McCollum, for the sole purpose of destroying diversity. (*Id.*)

More recent cases make clear that, in the United States Court of Appeals for the Fourth Circuit, the "no possibility" test governs and the "real intention standard" does not. *See Allard*, 163 F. Supp. 3d at 312; *see also Myers v. Air Serv. Corp.*, No: 1:07cv911, 2008 WL 149136, *2 (E.D. Va. Jan. 9, 2008) (finding that "the motive for joining . . . a defendant is immaterial, *even when the defendant is judgment-proof.*" (emphasis in original) (citations omitted)); *Harris v. Webster*, No. 3:08cv397, 2008 WL 4396231, *3 (E.D. Va. Sept. 23, 2008) ("Plaintiff's intention to seek recovery from [the defendant] is too subjective a basis on which to resolve the issue."). Although the removing defendants correctly state that the Court may consider the entire record to make its determination, "the crucial question pertains to the likelihood of liability, not the likely success of collection efforts." *Myers*, 2008 WL 149136 at *2.

[6] On a Motion to Remand that requires the Court to decide whether fraudulent joinder occurred, the Court resolves all issues of law and fact in the plaintiff's favor. *Hartley*, 187 F.3d at 424.

5

right shoulder." (*Id.* ¶ 14.) Freeman avers he "suffered extensive injuries, including but not limited to, substantial loss of hearing, blast injury, contusion of right shoulder, and suffers continued pain in the right shoulder." (*Id.* ¶ 15.) Freeman seeks $2,800,000 in damages and $350,000 in punitive damages.

In his Complaint, Freeman charges that, at the time of the explosion, Edward McCollum "was the plant manager" of the Waste Site responsible for maintenance of the boiler.[7] (*Id.* ¶ 42.) According to Freeman, McCollum had sufficient information to foresee the safety risks associated with the boiler that ultimately exploded, but continued to operate the boiler anyway.

First, Freeman alleges that prior to the explosion, "a qualified and licensed maintenance technician found problems, upon routine inspection, associated with the boiler that exploded." (*Id.* ¶ 24.b.i.) Specifically, an "improper[ly] sized feedwater tank, boiler, and burner," (*id.* ¶ 44.b.iii), prevented "proper functionality" of the boiler, (*id.* ¶ 44.b.ii).[8] The improperly sized components, according to Freeman, caused the explosion that injured him. Freeman contends that McCollum knew of the safety risks, but did not address the problems.

---

[7] The Complaint also contests actions taken by the other named Defendants, stating that each entity breached its duty of care towards Freeman. Because resolution of the Motion to Remand requires an analysis only of the allegations against McCollum, the Court need not evaluate the contentions against the other four Defendants.

[8] "[A] feedwater tank is the machinery employed to ensure the sufficient water level in a boiler." (Compl. ¶ 44.d.ii.2.) "[M]aintaining the proper water level in a boiler is an important factor in ensuring the proper functionality of a boiler." (*Id.* ¶ 44.d.ii.1.) Here, according to Freeman, the improperly sized feedwater tank "produced an insufficient amount of water for a 225 [h]orsepower boiler." (*Id.* ¶ 44.d.ii.5.) McCollum allegedly knew "that the improperly sized feedwater tank could be detrimental to the functionality of the boiler that exploded." (*Id.* ¶ 44.d.ii.6.).
Freeman also alleges, upon information and belief, that "McCollum was told that the burner connected to the boiler was too large for the boiler that was in place." (*Id.* ¶ 44.d.iii.) The boiler that exploded was a 225 [h]orsepower boiler, but the burner connected to it "was compatible with, and should be used only with, a 500 [h]orsepower boiler." (*Id.* ¶ 44.d.iii.1.) McCollum allegedly knew "that the improperly sized burner could be detrimental to the functionality of the boiler that exploded." (*Id.* ¶ 44.d.iii.3.)

6

Instead, "[u]pon information and belief, McCollum . . . continued to operate the boiler, in conjunction with the feedwater tank and burner, with the knowledge of their incompatible sizes." (*Id.* ¶ 44.b.iv.) According to Freeman, McCollum did this "because he was of the belief that Curtis Bay could not afford an upgrade until[sic] began making money." (*Id.* ¶ 44.d.v.)

Freeman claims McCollum lacked the requisite knowledge to operate the Waste Site, and the boilers specifically, resulting in negligent management. As the plant manager, McCollum "made it a regular practice to ask unlicensed . . . employees to operate the boilers at the waste site, with the knowledge that such employees were not licensed to operate said boilers." (*Id.* ¶ 44.c.i.) He also asked qualified and licensed maintenance technicians to "turn[] the boiler on and off," (*id.* ¶ 24.a.ii.), although McCollum himself should have undertaken this "simple" task, (*id.*). And McCollum routinely "sought help in turning the boilers on in order to begin operations." (*Id.* ¶ 44.a.iii.). Freeman contends that McCollum's negligent acts and omissions[9] caused the explosion and Freeman's injuries.

### III. Analysis

The Curtis Bay Defendants and McCollum removed this case, positing that, although both Plaintiff Freeman and Defendant McCollum reside in Virginia, this Court has subject matter jurisdiction based on diversity. The Curtis Bay Defendants and McCollum argue that the Court should disregard McCollum as fraudulently joined because no possibility exists that Freeman could bring a cause of action against McCollum. (Resp. Mot. Remand 2, ECF No. 13.) Because the Curtis Bay Defendants and McCollum fail to meet the heavy burden required to demonstrate fraudulent joinder, the Court must find that Freeman did not fraudulently join McCollum. In the

---

[9] In addition to these affirmative acts, Freeman also asserts that McCollum failed to: (1) acquire and maintain adequate information regarding operating a medical waste site; (2) oversee and ensure the safe operation of the Waste Site, including compliance with safety procedures; (3) oversee and ensure proper maintenance of the boiler and related machinery that ultimately exploded; and, (4) inform his supervisors of safety violations.

7

absence of complete diversity, which results when the Court considers McCollum's citizenship, the Court must remand the action for lack of subject matter jurisdiction.

### A. Legal Standard: Employees' Personal Liability

"Under Virginia law, an employee of the owner or operator of the premises in an action based on standard premises liability theories may be held liable only for affirmative acts of negligence, not merely because, in the status of employee of the owner or operator, he or she is guilty of an omission." *Berry v. SeaWorld Parks & Entm't LLC*, No. 4:14cv152, 2015 WL 1119942, at *3 (E.D. Va. Mar. 11, 2015) (quoting *Beaudoin v. Sites*, 886 F. Supp. 1300, 1303 (E.D. Va. 1993)). "An employee may be liable for his [or her] own misfeasance (i.e., performance of an affirmative act done improperly), but not for his [or her] own nonfeasance (i.e., omission to do some act which ought to be performed)." *Harris v. Morrison, Inc.*, 32 Va. Cir. 298, 298–99 (1993).

"Both state and federal courts have found that, under Virginia law, a plaintiff who alleges only an employee's failure to detect, remove, or warn of a danger has failed to state a claim of misfeasance for which the employee may be personally liable." *Hall v. Walters*, No. 3:13cv210, 2013 WL 3458256, at *4 (E.D. Va. July 9, 2013). However, if the plaintiff alleges that the employee actually caused the dangerous condition, she or he asserts a claim of misfeasance sufficient for the possibility of liability. *Id.* A manager's "affirmative direction to her [or his] subordinates" constitutes an affirmative act. *Logan v. Boddie-Noell Enterprises, Inc.*, 834 F. Supp. 2d 484, 492 (W.D. Va. 1011) (citing *Harris v. Webster*, 2008 WL 4396231, at *4). Even a direction requiring subordinates to refrain from acting may itself constitute an affirmative act that requires the Court to remand the action. *Id.*

8

### B. Freeman Alleges Affirmative Actions by McCollum that May Give Rise to Liability

Distinguishing between nonfeasance and misfeasance requires a fact-intensive inquiry. Here, the outcome is not overwhelmingly evident.[10] When determining whether the doctrine of fraudulent joinder applies, the Court must resolve all factual and legal questions in favor of the plaintiff, a highly deferential standard. *Hartley*, 187 F.3d at 424. The Curtis Bay Defendants and McCollum bear a heavy burden to remain in federal court, and they cannot carry it here. The Court concludes, under this standard, that Freeman asserts misfeasance by McCollum sufficient to establish at least the possibility of liability. *Hall*, 2013 WL 3458256 at *4.

On review, Freeman's Complaint contains at least two allegations of affirmative acts taken by McCollum that led to Freeman's injuries.[11] *Harris v. Morrison*, 32 Va. Cir. at 298–99. First, Freeman contends that, with knowledge of the safety risks,[12] McCollum "continued to

---

[10] Because this case presents a nuanced factual and legal inquiry, the Court declines to award attorney's fees. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). But a court should only award attorney fees "if the removing defendant[s] lacked objectively reasonable grounds to believe the removal was legally proper." *Martin v. Franklin Capital Corp.*, 126 S. Ct. 704, 708 (2005). Although the Court will remand this case to the Petersburg Circuit Court, nothing in the record would support a finding that the Curtis Bay Defendants and McCollum lacked an objectively reasonable basis to remove the case.

[11] Defendants accurately state that the "Complaint is replete with references to Mr. McCollum's purported omissions." (Resp. Mot. Remand 8.) Although Freeman alleges more omissions than affirmative acts by McCollum, the existence of *any* affirmative acts by McCollum—creating even the possibility of liability—suffices to require remand by this Court. *See Hartley*, 187 F.3d at 424; *see also Harris*, 2008 WL 4396231, at *4 (remanding a case that alleged both omissions and affirmative acts).

[12] Specifically, Freeman alleges that McCollum acted with knowledge of the improperly sized feedwater tank, boiler, and burner, which prevented the proper functioning of the boiler and ultimately caused the explosion.

operate the boiler." (Compl. ¶¶ 44.b.iv, 44.c.iv.) This constitutes an affirmative act.[13] And according to Freeman, operating the boilers alone amounted to a negligent act because McCollum knew about the safety risks caused by the improperly sized feedwater tank, boiler, and burner. An allegation that McCollum "actually caused the dangerous condition asserts a claim of misfeasance sufficient for the possibility of liability." *Cruz v. Krispy Kreme Doughnut Corp.*, No. 3:15cv257, 2015 WL 5970338, at *4 (E.D. Va. Oct. 13, 2015). Here, Freeman alleges that McCollum negligently operated the boiler that ultimately exploded, causing Freeman's injuries. Freeman asserts a claim of misfeasance, not nonfeasance. *See Quesenberry*, 184 F. Supp. 3d at 312.[14]

---

[13] According to Defendants, Freeman "is alleging that Mr. McCollum, as the purported plant manager, failed to shut down the facility due to the alleged incompatibility of the boiler system." (Resp. Mot. Remand 9.) Defendants' attempt to recharacterize Freeman's Complaint as alleging only nonfeasance must fail because of the deference due at this procedural stage.
Freeman plainly alleges that McCollum "operated the boiler." (Compl. ¶¶ 44.b.iv, 44.c.iv.) And the Complaint asserts that McCollum, at least through directives to subordinates, turned the boiler on and off to begin and end operations. Coupled with knowledge of a faulty system, his direct operation of the boiler and direction of others to operate the boiler constitute affirmative acts for the purpose of establishing personal liability under Virginia law. *See Quesenberry v. Southern Elevator Co., Inc.*, 184 F. Supp. 3d 310, 312 (W.D. Va. 2016).

[14] In *Quesenberry*, a plaintiff suffered injuries "when an elevator he was using dropped at a high rate of speed." 184 F. Supp. 3d at 312. Earlier that day, the subject elevator malfunctioned and an elevator technician addressed the malfunction. *Id.* After running several—but not an exhaustive series of—tests, the elevator technician "placed the elevator back in service." *Id.* The plaintiff brought suit against the elevator technician, asserting that he affirmatively caused the dangerous condition by putting the elevator back into service. *Id.* The defendants attempted to recharacterize the allegations, arguing that the elevator technician failed to fix the malfunctioning elevator, constituting only an omission that would not create the possibility of a cause of action against the elevator technician. *Id.* at 315–16. The *Quesenberry* court disagreed, finding that putting the elevator back into service constituted an affirmative act. *Id.* at 318.
Here, the Curtis Bay Defendants and McCollum cannot assert that Freeman alleges only nonfeasance. To the extent they contend that McCollum only failed to turn off the boiler (an argument inconsistent with Freeman's allegations), their position cannot prevail at this procedural posture, when the Court must resolve all factual doubt in favor of Freeman. *Hartley*, 187 F.3d at 424. Freeman asserts that McCollum turned the boiler on and off, or caused it to be turned on and off, amounting to an affirmative act that put the boiler into operation. Given his

Second, Freeman alleges that McCollum, with knowledge of the safety risks, routinely asked employees to operate the boilers at the Waste Site, knowing the employees "were not licensed to operate said boilers." (Compl. ¶¶ 44.b.i, 44.c.i.) A manager's "affirmative direction to her [or his] subordinates" constitutes an affirmative act that may give rise to liability. *Logan*, 834 F. Supp. 2d at 492 (citing *Harris v. Webster*, 2008 WL 4396231 at *4).

In *Harris v. Webster*, a plaintiff slipped on liquid laundry detergent in the aisle of a supermarket. 2008 WL 4396231 at *1. An employee had previously alerted the defendant store manager of the spill, but the manager had instructed the employee not to clean up the detergent. *Id.* The plaintiff asserted that the manager acted improperly by: (1) negligently failing to remove the soap or warn shoppers with signs, and; (2) negligently instructing the employee not to clean the soap. *Id.* at *4. The *Webster* court found that declining to clean the soap constituted an omission, but that instructing an employee not to clean up the soap constituted an affirmative act. *Id.* The *Webster* court concluded: "It is not the function of this Court to examine the sufficiency of the claim, or its likelihood of success in the state Court, but only to determine if a plausible claim can be asserted against the" manager. *Id.*

Here, Freeman alleges that McCollum directed his subordinates to operate the boilers despite knowledge of the alleged safety risks. Such a direction amounts to an affirmative act for the purpose of determining whether a plaintiff fraudulently joined a defendant. *Logan*, 834 F. Supp. 2d at 492 (citation omitted). Accordingly, a possibility exists that Freeman may bring a cause of action against McCollum for affirmatively directing his subordinates to negligently operate the boilers.

---

knowledge of a faulty system, this sufficiently establishes the possibility of liability. *Quesenberry*, 184 F. Supp. 3d at 312; *see also Cruz*, 2015 WL 5970338 at *4.

The Court concludes that Freeman alleges affirmative negligent acts by McCollum that caused the boiler to explode.[15] Because the Curtis Bay Defendants and McCollum cannot show that no possibility exists that Freeman might bring a cause of action against McCollum, these removing defendants fail to meet their heavy burden to demonstrate that Freeman fraudulently joined McCollum in this action. *See Hartley*, 187 F.3d at 424. Considering McCollum's citizenship, as it must, the Court concludes that complete diversity does not exist between parties. The Court lacks subject matter jurisdiction and must remand the case to the Petersburg Circuit Court. 28 U.S.C. § 1447(c).

### IV. Conclusion

For the foregoing reasons, the Court will grant Freeman's Motion to Remand. (ECF No. 9.) The Court declines to award fees. An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: 1/15/19
Richmond, Virginia

---

[15] Of course, the Court does not make any findings related to the likelihood of success of Freeman's claims against McCollum—or the other defendants—in the Petersburg Circuit Court. *See Harris*, 2008 WL 4396231 at *4. In deciding the Motion to Remand, the Court finds only that the Curtis Bay Defendants and McCollum failed to meet the heavy burden of establishing that no possibility exists that Freeman can bring a cause of action against McCollum. *Hartley*, 187 F.3d at 424.

12